**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

MELISA KULLA,                                    **Case No.:** 1:26-cv-05294

                              Plaintiff,

                                                  **COMPLAINT**

        -against-

TRAXNYC CORP., and MAKSUD AGADJANI, *in his*      **PLAINTIFF DEMANDS**
*individual and official capacity*                **A TRIAL BY JURY**

                              Defendants.

------------------------------------------------------------------X

Plaintiff MELISA KULLA, ("Plaintiff"), by and through her attorneys PHILLIPS &

ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendants, TRAXNYC

CORP ("Trax") and MAKSUD AGADJANI ("Agadjani") (collectively referred to as

"Defendants"), upon information and belief, as follows:

## INTRODUCTION

1.    This action arises from a pattern of egregious sexual harassment, sex-based discrimination,
      retaliation, and post-employment terror perpetrated by Defendant Maksud Agadjani, the
      founder, owner, and CEO of Defendant TraxNYC Corp., against Plaintiff Melisa Kulla, a
      former Sales Manager who built her career at Trax from the ground up.

2.    Over the course of months, Agadjani subjected Plaintiff to a hostile work environment
      saturated with sexually degrading insults, ethnic slurs, and threats. When Plaintiff rejected
      his romantic and sexual advances, including a marriage proposal in October 2024, he
      responded with an avalanche of vulgar and threatening text messages calling her, among
      other things, a "disgusting fucked up bitch," a "stupid monkey brained bitch," and warning
      her: "Wait till I see you." When she sought time off after he reduced her to tears and
      physical illness, he suspended her pay and constructively discharged her. Taking her job

1

was not enough. Agadjani then leveraged his millions of social media followers to blacklist her from the Diamond District entirely, publicly threatening any business that dared to work with her.

3. Agadjani is not merely a harassing employer. He is a man with 2.8 million Instagram followers, 4.1 million YouTube subscribers, and an iron grip on New York City's Diamond District. He has made clear that he intends to use every one of those resources to ensure that Plaintiff cannot work, cannot succeed, and cannot escape him.

## NATURE OF THE CASE

4. Plaintiff brings this action alleging that Defendants have violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, New York State Executive Law §§ 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq.* ("NYCHRL"), the New York Common Law, and the NYC Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101 *et seq.* ("GMVA")[1], and seeks damages to redress the injuries she has suffered as a result of being subjected to sexual harassment and discriminated and retaliated against on the basis of her sex/gender, national origin, and race/ancestry.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

5. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

6. The Court has supplemental jurisdiction over Plaintiff's claims brought under the

---

[1] The Victims of Gender-Motivated Violence Protection Law presently appears in the New York City Administrative Code under two parallel numbering schemes—as §§ 8-901 et seq. and as §§ 10-1101 et seq. The two sets of provisions are substantively identical, and both courts and litigants have cited the law under each. The numbering used herein is therefore immaterial to the claims asserted.

NYSHRL, NYCHRL, the New York Common Law, and GMVA pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8. By filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on September 29, 2025, within 300 days of the last incident of discrimination, (b) receiving a Notice of Right to Sue from the EEOC on April 21, 2026, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A;"** a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as **"Exhibit B."**

## PARTIES

9. Plaintiff resides in the State of New York and New York County.

10. Plaintiff is a 27-year-old woman of Albanian descent.

11. Trax is a domestic corporation with its principal place of business located at 64 W 47th St, New York, New York 10036.

12. Trax is one of the leading companies in New York City's renowned Diamond District, specializing in selling high quality jewelry with a selection worth over $300 million.[2]

---

[2] https://www.traxnyc.com/about

13. Trax provides service to an array of celebrity clients, including, *inter alia*, Busta Rhymes, Conor McGregor, Cardi B, Mr. Beast, Pauly D, Pete Davidson, Snoop Dogg, Mark Wahlberg, Kodak Black, Jon Jones, Joyner Lucas, and Erica Mena.

14. Agadjani is a 38-year-old man of Azerbaijani descent.

15. At all times relevant, Agadjani was and is the founder, owner, and CEO of Trax.

16. Agadjani had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, and was a decisionmaker at the company.

17. In 2019, Agadjani appeared in the critically acclaimed film *Uncut Gems* starring Adam Sandler.

18. Since then, Agadjani's popularity has skyrocketed, amassing a huge following through social media and appearing in publications like GQ as a jewelry reviewer.

19. Agadjani's main Instagram page named "TraxNYC" has approximately 2.8 million followers.

20. Agadjani's YouTube channel, "TraxNYC Diamond Jewelry," has approximately 4.1 million subscribers.

21. Agadjani's TikTok page, "TraxNYC," has approximately 2.3 million followers.

22. On April 3, 2025, the online publication Complex ranked Agadjani among the Top 25 Celebrity Jewelers.

23. At all times relevant, Defendants had more than 50 employees.

24. Defendants were "employers" within the meaning of Title VII, NYSHRL, and the NYCHRL.

## **MATERIAL FACTS**

### **Plaintiff's Employment with Defendants**

25. On July 15, 2022, Plaintiff began working for Defendants as a Sales Associate.

26. Plaintiff quickly became instrumental to Defendants' business growth, as she was a smart, talented, passionate, and dedicated employee.

27. Plaintiff consistently achieved high sales numbers and built strong client relationships.

28. On January 1, 2024, as a result of her strong performance, Defendants promoted Plaintiff to Sales Manager.

29. As a Sales Manager, Plaintiff managed a team of approximately 30 employees, processed client orders, and built and maintained client relationships.

30. Throughout her employment, Plaintiff performed her duties in an exemplary manner and had no performance issues.

**Plaintiff's Relationship with Agadjani**

31. Shortly after Plaintiff began working for Defendants, Agadjani initiated a romantic relationship with her.

32. Plaintiff and Agadjani briefly dated from around September 2022 until approximately December 2022.

33. Plaintiff ended the relationship due to Agadjani's abusive behavior.

34. Thereafter, Plaintiff expected to continue carrying out her job duties in a professional manner as she valued Defendants' business and was committed to helping Defendants achieve success.

35. Plaintiff continued to be a key contributor to Defendants' growth.

36. Defendants publicly described Plaintiff as "one of the driving forces behind [Defendants] sales operations and a dedicated manager. She embodies everything that makes our sales team stand out in the heart of New York City. [Plaintiff] is hard working, humble and

fiercely loyal, always striving for what's best for the business and clients."[3]

**Agadjani Starts to Retaliate Against Plaintiff for Rejecting His Advances**

37.   In or around September 2024, Agadjani began pursuing Plaintiff romantically once again.

38.   Plaintiff promptly made clear that she valued her job at Trax and had no interest in rekindling a romantic relationship.

39.   Agadjani continued to make advances, creating a sexually hostile work environment.

40.   On one occasion at work, Agadjani approached Plaintiff and attempted to kiss her in his office.

41.   Plaintiff immediately pulled away and reiterated that she was not interested in a relationship.

42.   As Plaintiff continued to reject his advances, Agadjani became irritable and aggressive towards her.

43.   Agadjani's hostility escalated, and he began to retaliate and lash out angrily at Plaintiff.

44.   On multiple occasions, Agadjani called her an "Albanian Monkey."

45.   Agadjani's conduct was making work increasingly difficult for Plaintiff and she starting experiencing anxiety.

46.   Since Plaintiff rejected his advances, Agadjani became visibly jealous whenever Plaintiff interacted with male clients, especially celebrity male customers.

47.   For example, in or around September 14, 2024, comedian Pete Davidson visited Defendants' offices to purchase jewelry.

48.   After the visit, Davidson contacted one of Defendants' employees and requested Plaintiff's contact information.

---

[3] https://www.youtube.com/watch?v=AMsRm3iW8VU

6

49. Plaintiff shared her contact details with Davidson.

50. Shortly thereafter, Davidson began texting Plaintiff.

51. Plaintiff engaged in the communications in good faith, believing it could benefit Defendants by building a relationship with a celebrity customer.

52. A few weeks later, Davidson returned to Defendants' offices to purchase more jewelry.

53. Agadjani was present that day and observed Plaintiff interacting with Davidson.

54. Within earshot of Agadjani, Davidson made a comment to Plaintiff that indicated they had been texting.

55. After Davidson left, Agadjani lashed out at Plaintiff, accusing her of flirting with Davidson.

56. Plaintiff was stunned that Agadjani was criticizing her instead of acknowledging her success in sourcing a high-end watch for a client.

57. She was also upset that Agadjani was continuing to monitor and harass her.

58. Concerned about Agadjani terminating her, Plaintiff explained that her communication with Davidson was purely business-related and aimed at promoting Defendants' brand.

59. To prove her point, Plaintiff handed her phone to Agadjani and allowed him to review the text messages.

60. Nevertheless, Agadjani continued to express jealousy and direct hostility toward her for rejecting his advances.

61. Then, on or around October 1, 2024, without any indication of interest from Plaintiff, Agadjani proposed marriage to her.

62. Plaintiff reiterated that she was not interested in a romantic relationship with him, and instead, she wished to date other people.

63. Plaintiff hoped that this final rejection would put an end to Agadjani's sexual harassment.

7

64.    Plaintiff enjoyed and highly valued her position at Trax and wished to focus solely on continuing to grow Defendants' business.

65.    Instead, Agadjani reacted with rage and hurled additional insults at her.

66.    Agadjani made clear that Plaintiff's rejection would not be taken lightly.

**Agadjani Harasses Plaintiff With Vulgar and Abusive Text Messages**

67.    After Plaintiff rejected Agadjani's marriage proposal, Agadjani intensified his campaign of retaliation.

68.    On November 23, 2024, a day in which Plaintiff was not scheduled to work, Agadjani called her without any work-related reason or provocation.

69.    Plaintiff did not answer, but texted Agadjani reminding him that it was her day off.

70.    In response and with no provocation, Agadjani texted Plaintiff a barrage of hostile and vulgar messages, berating her with accusations and insults.

71.    Specifically, Agadjani stated:

> "Go Fuck yourself. Pick up the fucking phone you fucking asshole. Are you fucking stupid? Your [sic] a disgusting fucked up bitch. Telling me to leave you alone after you leave work. Fuck you melisa. You nasty bitch. Your [sic] fucking stupid. And your rules and ideas. Retard. Wait till I see you. You think it's all good. Pick up the fucking phone I'm telling you right now. Nasty stupid bitch. Cunt. Fuck you. Nasty fucking disgusting bitch. The fucking nerve you have. You disrespectful piece of worthless shit. Yo your [sic] pissing me the fuck off. I'm telling you Melisa. You better pick up the fucking phone. You stupid nasty fucking bitch. Ungrateful selfish piece of fucking shit […] You really are such a piece of fucking shit. Stupid fucking bitch. Thoughtless heartless fucking bitch. To not pick up a fucking phone call. You stupid piece of worthless shit […] You fucking piece of garbage. You have the fucking nerve melisa. The fucking nerve. Nasty fucking stupid bitch. Pick up the fucking phone! Nasty fucking bitch […] You dumb fucking bitch. You have the nerve to talk to me like this. You got the fucking nerve you stupid little bitch […] You better pick up the phone I'm telling you. I'm fucking telling you dumb little bitch. Your dumb fucking ideas and rules. Nasty fucking bitch. Disgusting

8

fucking person. Retarded ungrateful moron. Stupid bitch is me being nice to you. You lying, disgusting, deceitful, thoughtless, heartless, piece of fucking shit. What an ungrateful nasty little bitch you are. Pretending to be a good person. I hope it was as worth it. To not pick up a fucking call. Stupid monkey brained bitch. Over a fucking phone call. Stupid ass bitch. Lost all of my fucking respect."

72.    In response, Plaintiff expressed that she was hurt and upset by the harassment and reminded Agadjani that she did not want a romantic relationship with him:

"I feel really upset when you talk like this and I want to be bigger person and not bring this back to you. I feel attacked all the time by you. This is the way how I could protect myself by detaching […] I have left and not spoken back to not hurt you when I felt unappreciated and disrespected, I have spoken back, I have raised my voice, I have spoken for hours with you, basically tried everything before giving up. So we have to move on and accept the fact that us is not healthy for each other. I'm working for you, I'm managing at your work and I'm happy to give my 100% because I believe in you but I don't believe in any relationship between us. I hope you understand, and I will try to understand you more"

73.    Infuriated by the repeated rejections, Agadjani continued to lash out at her through additional hostile messages stating:

"all your words are bullshit. You are out there looking for someone to fuck. Instead of being a woman. You don't know what the fuck you are doing […] your [sic] a fucking idiot melisa. You never treated me with any respect. Go find someone else to fuck melisa. Let them use you like you like being used. And then make up a bunch of stories to yourself and your family like the stupid bitch that you are […] bitch […] disgusting fucking monster. Telling me some bullshit. You dumb fucking piece of worthless shit. You got a bunch of people who want to cum in your face lined up […] and your [sic] choosing to go on a carousel of dicks […] fucking bitch…"

74.    Hoping to end the exchange and preserve her professionalism, Plaintiff responded with a final message: "My choice is to refuse to deal with you. This was everything[,] you sealed it. Thank you for everything you have done for me. Take care!"

75.    Agadjani, further enraged, sent Plaintiff another message filled with anger and animosity

stating: "your choice is to be a stupid bitch. That's your choice."

76. This hostile outburst made clear that Agadjani was retaliating against Plaintiff for rejecting his romantic advances, using his position of power as CEO and supervisor to punish her for refusing to engage in a romantic relationship with him.

77. Nevertheless, it was the holiday season, and Plaintiff was intent on helping Defendants' business through its busy season.

**Plaintiff Continues to Experience Retaliation and is Forced to Quit**

78. In or around early January 2025, Plaintiff received an invitation from reality TV star Pauly D to attend his music set at Webster Hall.

79. The invitation came after Plaintiff helped design a custom chain for Pauly D, which Defendants publicly promoted on their social media accounts.

80. Plaintiff informed several of her co-workers about the invitation and planned to attend as a professional opportunity.

81. When Agadjani learned that a male celebrity client had invited Plaintiff to an event, he erupted and began yelling and insulting her.

82. Plaintiff explained that attending the event was a valuable networking opportunity and that she intended to create video content to promote Defendants' business.

83. Agadjani, concealing his jealousy, claimed he was angry because Plaintiff did not tell him directly about the invitation.

84. Agadjani then inaccurately accused Plaintiff that she was "gatekeeping his customers."

85. Agadjani continued to hurl insults at Plaintiff, despite her attempts to de-escalate the situation.

86. Plaintiff told Agadjani that she had already informed the team.

10

87. Agadjani, however, would not calm down.

88. Agadjani's erratic and angry tirade was scary.

89. Plaintiff felt physically unsafe and emotionally cornered.

90. The following day, still reeling from the harassment and abuse, Plaintiff texted Agadjani:

> "I really need few days off. What happened yesterday really put me in shock […] I'm really not doing well Maks. I do care for this job but when I'm not being able to even focus I'm not good for work. I have massive migraines and I can't even sleep at night. Talk soon in person."

91. Agadjani retaliated further, responding: "Your work and your pay is suspended"

92. Plaintiff was shocked and devastated. She knew this was not about business, but his sexual pursuit of her.

93. Plaintiff had no one to complain to and no one higher up that could end the abuse.

94. Having reached her physical and mental breaking point, Plaintiff responded: "You can suspend my work whatever you want Maks I can't work like this, I asked for few days off because I'm sick with migraine. Even when I've been sick with [cough] and temperature I've still been at work unless I'm really not doing well."

95. Agadjani doubled down on his retaliation, making clear that Plaintiff's job was contingent on her compliance with his personal sexual demands stating: "Your [*sic*] crossing the line. Your work and pay are suspended […] You destroyed your own life. Your [*sic*] a fool. The sooner this is over the better."

96. Following this exchange, Plaintiff knew she could not take more harassment and abuse.

97. For this reason, Plaintiff informed Defendants that she had no option but to resign.

**Post-Employment Sabotage of Plaintiff's Business Opportunities**

98. After resigning, Plaintiff had no backup plan and faced uncertainty about her professional

11

future.

99. Plaintiff was particularly worried as she understood that Defendants held immense power in the industry, which could impede her job prospects.

100. Moreover, as part of her resignation, Agadjani insisted she give up her professional Instagram account which had approximately 32,000 followers.

101. Finding no job prospects, Plaintiff immediately opened her own business, but multiple businesses told her that they would not work with her because it would upset Defendants.

102. It became clear that Plaintiff was not the only person who feared Agadjani.

103. To this end, Plaintiff contacted Defendants to ask whether, under the circumstances, it would be acceptable for her to reach out to the vendors she had personally introduced to the company.

104. Plaintiff had not signed any employment contract, non-solicitation agreement, or any restrictive covenant with Defendants, but was attempting to avoid conflict with Defendants.

105. In response, Agadjani refused her request and stated that he did not want to see Plaintiff succeed outside of his control.

**Agadjani Launches a Campaign of Terror**

106. In or around early February 2025, a client, who had never conducted business with Defendants, reached out directly to Plaintiff to inquire about placing an order.

107. Plaintiff promptly informed the client that she was no longer working with Defendants.

108. The client responded that he did not care, and that he was interested in working directly with Plaintiff.

109. As such, Plaintiff moved forward with the client's order.

110. When Agadjani learned about this, he berated Plaintiff over text, stating:

12

"stealing my fucking customers Melisa? With those fucking stones. Fuck you. You piece of money hungry shit. Fuck you. Trash worthless bitch. Lying disgusting whore. Turn your nose up bitch keep trying. Wishing me the best. You trash bitch. You stupid money hungry whore. Used up dumb bitch […] Secret stupid whore bitch. Pure heart, you nasty fucking used up slut. Keep fucking with my money and my business you dumb lying whore. Playing Mario kart. Your [sic] a slut who's been trashed bitch. Keep putting on an act. You ran through used up pile of shit. Thanks for biting on my cock stupid monkey bitch. Stupid lying bitch. Animal. Ungrateful entitled piece of shit."

111. Plaintiff responded respectfully, attempting to deescalate the situation, explaining that she wished to remain in good terms with Defendants.

112. Agadjani, however, threatened her safety: "The fact that I built you a happy and amazing life and this is what you did with it makes me want to see you suffer and fail […] You need to be put in your place[,] I will do it Melisa."

113. Plaintiff was scared, physically shaking, and began fearing being out in public.

114. Legitimizing her concerns, on April 22, 2025, Plaintiff saw Agadjani while walking in the Diamond District with her friend Saul Nhaisse, who also works in the jewelry industry.

115. Without hesitation or provocation, Agadjani screamed: "who are you looking at you bitch. Leverage whore!"

116. Agadjani briefly walked away but doubled-back from the other side of the street, yelling to Nhaisse: "Be careful from that bitch Saul because she will use you too."

117. This encounter reinforced her terror, but she was determined to not let Agadjani interfere with her life further.

118. Soon thereafter, Plaintiff ran into a vendor whom she had previously done business with from the store Simon Diamonds.

119. The vendor reached out to Plaintiff and asked how she had been. Plaintiff explained that

she had started her own business due to limited job opportunities.

120. Agadjani saw them speaking and began shouting profanities in Russian at both Plaintiff and the vendor.

121. The vendor, startled, tried to de-escalate the situation by explaining he was only having a casual conversation with Plaintiff and told Agadjani not to worry because he had no intention of doing business with Plaintiff.

122. Moments later, Agadjani continued his harassment.

123. Knowing her physical safety was at risk, Plaintiff began recording Agadjani's behavior.

124. Agadjani continued to yell and verbally assault her stating: "Tell Flora (Plaintiff's mother). Film it for Flora bitch. Film that shit for Flora for your mom. Hey Flora, how are you? You know what your daughter's up to right. She's pretending to be a good girl but she ain't."

**Agadjani Defames and Continues to Threaten Plaintiff Through Social Media**

125. Although Plaintiff started her own business, she still sought new employment, but found it incredibly difficult as businesses openly told her that they did not want to upset Defendants by hiring her.

126. This was confirmed on May 8, 2025, when Agadjani published a video to millions of followers on Instagram, YouTube, and TikTok stating:

> "If you see some of these pieces of worthless shit crouching around the [Diamond District] that used to work for me, that left because they are trash. They don't belong there. And I am going to sweep them off the fucking block. And if you choose them over me and you are that fucking stupid and you are going to do business with those pieces of worthless shit Imma fucking go after you. I'm never going to let nothing fucking go. Nothing! Because I earned it. And I handled myself like a fucking man. And you dick suckers [...] and dick biters pack your bags and get the fuck out of that street."

127. That same day Agadjani posted an Instagram story attacking Plaintiff and two other

14

employees that resigned stating: "Jose, Yashu and Melisa all three of you. All trying to find a sneaky rat fucking path to fuck me over the whole fucking time. Fuck you. Don't have the decency to fuck off. Motherfuckers have to come around and show their face […] you're trash. You are all trash and get the fuck out of here man […] fuck right off."

128. Agadjani continued his defamatory attacks of Plaintiff, mocking Plaintiff in another Instagram story stating: "And Melisa was out there like if she was a good girl […] You're such a good girl. You're such a good girl right. I hope Flora knows what a fucking great girl you are."

129. That same day, the Instagram page "the_meme_district_nyc" — a page dedicated to publishing memes about the Diamond District — republished Agadjani's Instagram story as a standalone post captioned "Good girl."

130. In the comments of the post, a fan of Agadjani requested context about who Agadjani was attacking, to which another fan replied that the video is about Plaintiff who "backstabbed him by fishing in the same pond she was taught to fish in."

131. In response to the video, another fan commented that Agadjani should "stop hiring all these weasels."

132. Agadjani continued his defamatory attacks with another Instagram story telling his 2.8 million followers: "If you try to sit there like Melisa standing there all defiant, doing this, doing that, bitch get the fuck up out of here you delusional crazy ass bitch. Get the fuck out of here. Don't sit here like you are tough and defiant. I've seen your defiant face. Don't worry about it."

133. The following day, May 9, 2025, the Instagram page "the_meme_district_nyc" re-published another video of Agadjani.

15

134. In the video Agadjani continues to defame Plaintiff, insinuating that she is sabotaging his business:

> "I'm paying you and you are sucking dick over there. I'm paying you and you're sucking dick and helping a motherfucker fuck me over. Dumb, stupid ass backwards backstabbing. She was trying to suck this dick, she was trying to suck that dick. She's trying to do this, she did that, she wants to be fucked this way, that way… Yo whore! You got a god damn fucking job! Do your job. Make fucking money. I gave you this, I gave you a raise. You're sitting here and trying to scheme behind these motherfuckers, suck dick. Tell me what the fuck I need to know motherfucker!

135. Although Agadjani did not mention Plaintiff by name, a fan of Agadjani commented on the video asking if this was a "Melisa problem." The Instagram page "the_meme_district_nyc" liked the comment confirming to Agadjani's fans that the video was directed towards Plaintiff.

136. That same day Plaintiff published a video to her personal Instagram account, which only has 700 followers, stating that she hoped to bring smiles to people even though the day was cloudy in New York.

137. In response, a fan of Defendants commented on her video stating "You mean that fake smile you would give max at trax?"

138. Plaintiff became incredibly upset, knowing that the defamation was not only affecting her professional life, but also her personal life.

139. On May 10, 2025, Agadjani continued his defamatory attacks through his main Instagram page posting a series of Instagram stories addressed to Plaintiff and her parents stating that he needed to address the "Melisa problem."

140. In the stories Agadjani continued his defamatory attacks, insinuating that Plaintiff was sabotaging her business and engaging in sexual relations to advance her career.

141.    Specifically, Agadjani told his followers:

> "Before I go any further, I'm going to reach out to Flora and Daut, Melissa's parents. Try to explain to them the situation as I've been trying to explain to them for a long time. They got no control over their daughter. She's wild. She feels like she's got a big destiny. She feels like she's this, she's that. And I wish her the best. But attacking my business and trying to hurt me constantly is not a good idea for anybody, OK? Doesn't matter what destiny they think they have, OK? Because I'm an honest person."

142.    Agadjani, continued his sexually defamatory attacks against Plaintiff through his Instagram stories, stating: "I speak the truth. I truly stand behind what the fuck I'm doing and I never what for money? I never what? Let's keep it PG…"

143.    Agadjani published to his 2.8 million followers on Instagram:

> "People feel entitled and they want to take advantage of me […] Don't disrespect me. I'm not going to tolerate it. Gold ain't the only thing I can give. Understand when it comes to Melissa. She likes to take revenge. She wants to prove that she's greater. She wants to prove that she's better. That she did that. She's that. Melissa, I seen you. I know who you are. Don't prove nothing to me. Get the fuck away from me and my business. OK? […] Flora and Daut [are] going to have to gather around the kitchen table and think about this situation."

144.    That same day, Agadjani texted one of Plaintiff's former co-workers:

> "Yo bro you let that whore Melisa play with you. She fucked and sucked dick to become a manager. She's pretending to be a good girl. She's a Monster who cost you your job. And will now discard you like trash. I gave you a salary and a good chance to earn money. And you dump my business for a whore."

145.    Afterwards, Agadjani called Plaintiff thirteen times in a span of just a few minutes.

146.    Since Plaintiff did not answer any of the calls, Agadjani sent her a barrage of text messages through WhatsApp in which he continued his harassment:

> "I'm [going to] get you bitch. For everything your [*sic*] trying to do. I'm [going to] get you bitch. I'm teach you manners white whore. I'm [going to] teach you manners. Keep trying to take your whore

revenge. Keep trying. Keep struggling whore. Keep putting on that fake fucking smile. Your [sic] disgusting biter hateful bitch. Keep putting on that fake personality. While nothing but a trashed whore is behind it. I gave you many warning signs to fuck off. You dumb bitch. I told you to avoid this. You want [to] reach out and harm me and my life whore. Keep using your pussy to get ahead in life you disgusting bitch. You stupid retarded whore, keep spiraling down to hell just because you regret biting my cock. I didn't ask you to be a whore Melisa. You made that choice long before you met me. And you want me to pay the price. No whore. You continue to play with me. I'm telling you again bitch I will not tolerate you. Your [sic] only gonna make things more miserable. You have no destiny. Whores have no destiny. Destiny is for the girl you pretend to be. Not for the used up slut that you are. Go stick with the Jewish dickhead who's dick your sucking whore, use him for some money. That's your new job bitch. You stupid ungrateful whore. This isn't connect 4 you dumb bitch. Playing with me. Remember Melisa, I never put a dick in my mouth to get ahead in life. That's why I earned. Can you say the same thing? You dumb whore your [sic] telling me what I have to do and how? You came up with a scheme. To fuck me over. […] whore […] an entitled disgusting selfish bitch. Filled with hatred and jealousy. Because she could never be the girl she pretends to be. And deep down inside, she knows she's a trash whore who choked on dick and fucked men all over the place. Remember, that's who you are Melisa. That's why you can't get your head together. That's why you can't get shit done."

147. Just minutes later, Agadjani continued his degrading and abusive attacks through iMessage texts:

"You dumb fucking used whore. You dumb bitch. How far down this road you wanna go whore. You stupid disgusting bitch. Your [sic] pissing me the fuck off. You selfish entitled bitch. You stupid vengeful bitch. You really need to pull your leverage scheme. Whore you use your pussy to get ahead. Not your brain. What were you thinking about. Use that pussy for a trip bitch."

148. A few minutes later, Agadjani texted: "you want your full base and your full pay and everything just the way you want it right whore. Ok. Let's do it. Let's keep going all the [way] to the stones of the pit whore. I'm all for it."

149. Plaintiff decided to ignore the harassment, but Agadjani continued with his abusive texts

and harassment:

> "You want to nail me down whore? You had a plan to nail me down? Is that what I did for your stupid whore life when I paid you and took care of you while you fucked other man you stupid bitch. Do you want to dominate me and show me you're better than me after choking and biting on my cock? You mentally retarded whore. At this point of time, I don't even give a fuck what happens to me as long as I teach you manners I don't care. Some girl you jumped on my dick, schemed on my dick. Like a monster selfish whore. Sick animal. You could've walked away become a woman started from scratch but deep down you know you're not a woman you're a whore and you wanna claw something and you feel like you need more. Bitch claw at your own soul […] Using men like the whore that you are. While Flora watches on. Come with me darling love. To the very bottom. Retarded. Your [*sic*] retarded. Dick bitter Watcha doing."

150. The following day, May 11, 2025, the Instagram page "the_meme_district_nyc" published another video of Agadjani in which he states: "You suck Noah's dick, you're over there, you're over here. You did this to me, you did that to me. You turned and you stabbed me in the back for some fucking motherfucker where you suck his dick like a stupid ass fucking bitch and help them out, you dumb fucking stupid whore…"

151. Agadjani's fans understood that he was referring to Plaintiff as they commented: "Melissa, what did you do to this man."

152. On May 15, 2025, Agadjani threatened Plaintiff through WhatsApp to not taken any legal action against him:

> "Cross the line one more time bitch, and I will drag your parents into the reality of what their stupid whore daughter that they raised actually is, you fucking dumb trashed used up whore bitch […] stupid disgusting rotten retarded bitch. Play with me whore. Go ahead. Remember that I gave you a break dick chocking cock hungry bitch remember that […] what a disgusting whore you are. They should be thankful that I took their stupid whore daughter and took her from the desperate trash she was in to a new life. And they will be. Blink incorrectly bitch. Show how tough you are. I fucking dare you whore. Stupid little defiant bitch standing there. Bitch find

19

some guy to use and use them. That's what your [*sic*] good at. Or keep struggling to prove me wrong. Would love to see that."

153. Agadjani concluded his threats by stating:

"Fuck with my customers or staff. Then I will have to explain to your whole fucking family the extent of your depraved dick thirsting life you are living here in New York. Explain to them what type of stupid slut [they] dumped on me to deal with here. And they will answer for your ungratefulness and entitlement. Stupid dick thirsty trashed bitch, crawling towards my lap to get skull fucked again. I went easy on you whore remember that. Arrogant bitch."

154. The hostility, abuse and defamation from Agadjani has caused her to suffer extreme emotional distress.

155. Plaintiff rightfully fears for her physical safety and has filed a police report and obtained an Order of Protection against Agadjani.

156. Plaintiff also fears for her economic security, knowing that she will never be able to have gainful employment in the industry she knows and loves.

157. Despite an active Order of Protecting against him, Agadjani has not ceased his conduct toward Plaintiff. He has pursued different avenues through which he can harass Plaintiff.

158. Agadjani repeatedly contacted Plaintiff through a third party, "Micky B," which is a direct violation of the Order of Protection.

159. Micky B messaged Plaintiff on WhatsApp on May 1, 2026, stating:

"Hey Melissa, when you are finished with work if you have a few minutes I think it'd be good that me and you sit down briefly to try and finalize a resolution for all this we can cordially agree on, let me know when would be good for you and we can sit somewhere for a sec nearby the office."

160. Micky B stopped Plaintiff in the street and began talking to her about resolving matters, which Plaintiff understood to mean the legal matters between Agadjani and herself, despite Plaintiff's clear desire to not speak with him.

161.   On May 20, 2026, Agadjani had Micky B email a video to Plaintiff's counsel. The video depicted Agadjani disclosing, without Plaintiff's knowledge or consent, deeply personal and private medical information that Plaintiff had shared with him in confidence during the course of their relationship. The email claimed that the video was not public *yet*, but was recorded to be a public statement that Agadjani would make available on Youtube. This video was recorded in furtherance of the pattern of harassment described herein.

162.   Agadjani's posting of the video attached to the May 20, 2026 email publicly on Youtube would constitute a violation of the active Order of Protection as it prohibits Agadjani from posting about Plaintiff on any social media platform.

163.   Finally, since the instatement of the Order of Protection, Agadjani has repeatedly called and harassed Plaintiff's roommate about matters described herein in a hostile manner, using crude language.

164.   Plaintiff is now in even greater fear for her own physical safety and economic security as Agadjanihas has, through his actions detailed herein, made it clear that not even a court order will prevent him from harassing her.

165.   Plaintiff now suffers severe anxiety, suicidal thoughts, and is grappling with depression. She is anxious, overwhelmed, and demoralized.

## **HARM TO PLAINTIFF**

166.   Based upon the aforementioned conduct, Defendants discriminated against Plaintiff, subjecting her to a severe and pervasive hostile work environment because of her sex and gender.

167. Plaintiff was also subjected to quid pro quo sexual harassment, as Agadjani pressured Plaintiff to commit to a romantic relationship with him and harassed her once she rejected his advances.

168. Plaintiff was retaliated against for rejecting Agadjani's advances.

169. Defendants adversely affected the terms, conditions, and privileges of Plaintiff's employment by subjecting her to sexual harassment and retaliation.

170. Defendants failed to act or mitigate the harm to Plaintiff after becoming aware of the discriminatory conduct.

171. The discrimination, harassment and defamation that Plaintiff endured took a significant toll on her health.

172. Plaintiff has suffered and continues to suffer humiliation, shame, embarrassment, stress, nausea, loss of appetite, sleeplessness, and anxiety due to Plaintiff's discriminatory conduct.

173. The harassment and defamation by Agadjani through social media and text messages have led Plaintiff to have suicidal thoughts.

174. The harassment and defamation by Agadjani has damaged Plaintiff's reputation in the industry.

175. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

176. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

177. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

178. As such, Plaintiff demands punitive damages.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Against Defendant Trax)

179. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

180. The claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Trax.

181. Plaintiff complains that Trax violated Title VII's prohibition against discrimination in employment based, in whole or in part, upon Plaintiff's sex (female).

182. 42 U.S.C. §§ 2000e-2 states:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to him compensation, terms, conditions, or privileges of employment, because of such individual's …**sex**…

183. Trax engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e by discriminating against Plaintiff because of her sex (female).

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Against Defendant Trax)

184. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

185. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

23

186.    Trax engaged in unlawful employment practices by retaliating against and terminating Plaintiff for complaining of the aforementioned violations.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYSHRL**
**(Against Defendants)**

187.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

188.    Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's …**sex**…to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

189.    Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her sex (female).

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYSHRL**
**(Against Defendants)**

190.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

191.    Executive Law § 296 provides that,

> "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

192.    Defendants have engaged in unlawful employment practices by retaliating against and terminating Plaintiff for complaining of the aforementioned violations.

24

**AS A FIFTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER THE NYSHRL**
**(Against Defendant Agadjani)**

193.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

194.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

195.    Agadjani engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYCHRL**
**(Against Defendants)**

196.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

197.    The New York City Administrative Code §8-107(1) provides that:

> "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of…gender…to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

198.    Defendants engaged in unlawful discriminatory practices in violation of the NYCHRL by discriminating against Plaintiff because of her sex/gender (female).

**AS A SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYCHRL**
**(Against Defendants)**

25

199. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

200. The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activities.

201. Defendants have engaged in unlawful employment practices by retaliating against and terminating Plaintiff for complaining of the aforementioned violations.

## AS AN EIGHTH CAUSE OF ACTION
## AIDING AND ABETTING LIABILITY UNDER NYCHRL
### (Against Defendant Agadjani)

202. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

203. NYCHRL makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

204. Agadjani acted with the intent to discriminate against or harass Plaintiff.

205. Agadjani aided and abetted Trax's discriminatory practice, harassment and hostile work environment.

206. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A NINTH CAUSE OF ACTION
## DEFAMATION UNDER NEW YORK COMMON LAW
### (Against Defendant Agadjani)

207. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

208. Agadjani defamed Plaintiff by falsely publishing accusations that Plaintiff was stealing customers from Defendants and attacking Plaintiff's character and reputation.

26

209. These comments were defamatory per se, as the comments questioned Plaintiff's character, alleged that she engaged in sexual relationships to further her career, and led prospective employers to refuse to hire Plaintiff.

210. Plaintiff was harmed by these defamatory statements when prospective employers refused to hire her and had her reputation destroyed.

211. As a result of said conduct, Plaintiff's career and reputation will forever be ruined.

212. As a result of said conduct, Plaintiff continues to suffer severe emotional distress, reputational harm, and loss of career opportunities.

213. Agadjani is therefore liable to Plaintiff for defamation per se for damages in an amount to be determined at trial.

## AS A TENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS UNDER NEW YORK COMMON LAW
### (Against Defendant Agadjani)

214. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

215. Agadjani has intentionally interfered with and continues to intentionally interfere with and disrupt Plaintiff's prospective employment opportunities following the end of Plaintiff's employment with Defendants.

216. Agadjani has published videos to his social media threatening businesses who decide to hire Plaintiff.

217. As a result of Agadjani's intentional and wrongful actions, Plaintiff's job prospects were severely limited, which entitle Plaintiff to the maximum allowable damages under this statute and an award of punitive damages.

## AS AN ELEVENTH CAUSE OF ACTION
## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

27

**UNDER THE NEW YORK COMMON LAW**
**(Against Defendant Agadjani)**

218. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

219. At all times, Agadjani knew that his conduct was extreme and outrageous, intentional, and in reckless disregard of Plaintiff's well-being.

220. The harm caused to Plaintiff by Agadjani conduct was foreseeable.

221. Agadjani's conduct did in fact cause harm to Plaintiff.

222. As a result of Defendant Agadjani unlawful conduct, Plaintiff has suffered, and continues to suffer, suicidal ideation, depression, anxiety, a loss of self-esteem, social isolation, sleep loss, and feelings of inadequacy, for which she is entitled to an award of monetary damages and other relief.

223. Plaintiff is entitled to the maximum amount allowed under the common law civil claim of intentional infliction of emotional distress.

**AS A TWELFTH CAUSE OF ACTION**
**FOR CIVIL ASSAULT**
**(Against Defendant Agadjani)**

224. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

225. A claim of civil assault is defined as intentionally placing another in fear of imminent harmful or offensive contact.

226. Agadjani intentionally placed Plaintiff in fear of imminent harmful or offensive contact by repeatedly threatening Plaintiff through verbal attacks, text messages and social media posts.

227. As a result of Agadjani's unlawful conduct, Plaintiff has suffered and continues to suffer,

28

mental anguish and emotional distress, including, but not limited to, suicidal thoughts, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

228.    Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A THIRTEENTH CAUSE OF ACTION
## THE NYC VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT
### (Against Defendants)

229.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

230.    The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

231.    The above-described conduct of Defendant Agadjani constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in N.Y. C. Admin Code § 10-1103.

232.    Defendant Agadjani's crimes of violence were motivated by Plaintiff's gender as defined in the New York City Administrative Code § 10-1103.

233.    The above-described conduct of Defendant Agadjani constitutes sexual offenses as defined in Article 130 of the New York Penal Law.

234.    Defendant Agadjani's actions presented a serious risk of physical injury to Plaintiff's person, regardless of whether or not those acts resulted in criminal charges, prosecution or conviction.

235. As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

## AS A FOURTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER TITLE VII
### (Against Defendant Trax)

236. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

237. Plaintiff complains that Trax violated Title VII's prohibition against discrimination in employment based, in whole or in part, upon Plaintiff's national origin (Albanian).

238. 42 U.S.C. §§ 2000e-2 makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's national origin.

239. Trax engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e by discriminating against Plaintiff and subjecting her to a hostile work environment because of her national origin (Albanian), including through repeated ethnic slurs such as "Albanian Monkey."

## AS A FIFTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER THE NYSHRL
### (Against Defendants)

30

240. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

241. New York State Executive Law § 296 makes it an unlawful discriminatory practice for an employer, because of an individual's national origin, to discharge such individual or to discriminate against such individual in compensation or in the terms, conditions, or privileges of employment.

242. Defendants engaged in unlawful discriminatory practices in violation of New York State Executive Law § 296 by discriminating against Plaintiff and subjecting her to a hostile work environment because of her national origin (Albanian).

## AS A SIXTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER THE NYCHRL
### (Against Defendants)

243. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

244. The Administrative Code of the City of New York § 8-107(1) makes it an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived national origin of any person, to discriminate against such person in compensation or in the terms, conditions, or privileges of employment.

245. Defendants engaged in unlawful discriminatory practices in violation of the Administrative Code of the City of New York § 8-107 by discriminating against Plaintiff and subjecting her to a hostile work environment because of her national origin (Albanian).

## AS A SEVENTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION BASED ON RACE AND ANCESTRY UNDER 42 U.S.C. § 1981
### (Against Defendants)

246. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

247. 42 U.S.C. § 1981 guarantees to all persons the same right to make and enforce contracts, including the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, free from discrimination on the basis of race. The protection of Section 1981 extends to discrimination based on ancestry and ethnic characteristics.

248. Plaintiff is of Albanian ancestry and ethnicity.

249. Defendants intentionally discriminated against Plaintiff in the making, performance, enjoyment, and termination of the benefits, privileges, terms, and conditions of her employment relationship because of her ancestry and ethnicity, including by subjecting her to a hostile work environment and repeated ethnic slurs such as "Albanian Monkey" and "stupid monkey brained bitch," and by forcing her out of her employment.

250. Defendant Agadjani is individually liable under 42 U.S.C. § 1981 as the founder, owner, CEO, and decisionmaker who personally engaged in and directed the discriminatory conduct.

251. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages as set forth herein and is entitled to compensatory and punitive damages, together with attorneys' fees and costs.

**AS AN EIGHTEENTH CAUSE OF ACTION**
**FOR QUID PRO QUO SEXUAL HARASSMENT UNDER TITLE VII, THE NYSHRL, AND THE NYCHRL**
**(Against Defendants)**

252. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

253. At all relevant times, Agadjani was the founder, owner, CEO, and Plaintiff's supervisor, and possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment, including her compensation and continued employment.

254. Agadjani conditioned the terms, conditions, and privileges of Plaintiff's employment, including her compensation and continued employment, on her submission to his romantic and sexual advances.

255. When Plaintiff rejected Agadjani's advances, including his marriage proposal, Agadjani responded by suspending her work and pay and forcing her constructive discharge, as alleged above.

256. Agadjani's conduct constitutes unlawful quid pro quo sexual harassment in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

257. Trax is liable for the quid pro quo sexual harassment committed by its founder, owner, and CEO, and Agadjani is individually liable under the NYSHRL and the NYCHRL.

258. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages as set forth herein.

## JURY DEMAND

259. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL in that Defendants discriminated against Plaintiff on the basis of her sex/gender and national origin;

B. Declaring that Agadjani is civilly liable to Plaintiff for aiding and abetting Trax's

discriminatory practice and creating a hostile work environment;

C.  Declaring that Agadjani is liable for defamation per se, tortious interference with business, intentional infliction of emotional distress, and civil assault under the New York Common Law;

D.  Declaring that Defendants are liable under the GMVA;

E.  Declaring that Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 1981 on the basis of her race, ancestry, and ethnicity;

F.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

G.  Awarding Plaintiff punitive damages;

H.  Awarding Plaintiff injunctive relief, including an order (i) enjoining Defendant Agadjani from publishing, posting, or disseminating any statement or content concerning Plaintiff on any social media platform or otherwise; (ii) enjoining Defendant Agadjani from contacting Plaintiff, directly or through any third party; and (iii) directing the removal of the defamatory and harassing content previously published concerning Plaintiff;

I.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

J.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
June 23, 2026

35

**PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC**


By:   _____
Michelle A. Caiola, Esq.
*Attorney for Plaintiff*
45 Broadway, 28th Floor
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
MCaiola@TPGLaws.com

35