UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISA KULLA,<br><br>Plaintiff,<br><br>vs.<br><br>TRAXNYC CORP. and MAKSUD AGADJANI, in his individual and official capacities,<br><br>Defendants. | Civil Action No. 1:26-cv-05294-LJL<br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE SECOND, FIFTH, EIGHTH, AND TWELFTH CAUSES OF ACTION**

The Law Offices of Jason Goldman
275 Madison Avenue, 35th Fl.
New York, New York 10016
212.466.6617
jg@jasongoldmanlaw.com

# TABLE OF CONTENTS

**PAGES**

STATEMENT OF FACTS .......... 2

STANDARD OF REVIEW .......... 4

ARGUMENT .......... 5

I. COUNTS 5 AND 8 MUST BE DISMISSED BECAUSE AGADJANI IS THE ONLY ACTOR ALLEGED TO HAVE DISCRIMINATED AND NEW YORK LAW DOES NOT PERMIT AN INDIVIDUAL TO AID AND ABET HIS OWN VIOLATION OF THE HUMAN RIGHTS LAWS .......... 5

A. New York Law Forecloses an Aiding-and-Abetting Claim Premised on the Defendant's Own Conduct .......... 6

B. The Complaint Pleads Agadjani as the Sole Actor, Leaving No Primary Violation for Him to Have Assisted .......... 7

C. Count 8's Framing that Agadjani Aided Trax Does Not Save the Claim, Because Trax's Alleged Liability is Derivative of Agadjani's Own Conduct .......... 7

D. Tomka Does Not Permit These Counts to Proceed .......... 8

E. The Defect Cannot be Cured .......... 9

II. COUNT 12 MUST BE DISMISSED BECAUSE IT RESTS BY ITS OWN TERMS ON REMOTE VERBAL AND ELECTRONIC THREATS OF FUTURE HARM, WHICH DO NOT SATISFY THE IMMINENCE ELEMENT OF CIVIL ASSAULT .......... 9

A. Civil Assault Requires Apprehension of Imminent Conduct .......... 9

B. Count 12 Identifies its Own Factual Basis as Remote and Verbal .......... 11

C. The Street Encounters Do Not Supply the Missing Physical Act .......... 12

III. COUNT 2 MUST BE DISMISSED BECAUSE IT PLEADS RETALIATION FOR A COMPLAINT THAT THE COMPLAINT'S OWN ALLEGATIONS ESTABLISH WAS NEVER MADE ..... 13

A. A Title VII Retaliation Plaintiff Must Plausibly Allege Protected Activity of Which the Employer was Aware ..... 13

B. Paragraph 186 Pleads a Complaint, and Paragraph 93 Pleads That No Complaint Was Possible ..... 14

C. Recasting the Rejection as Protected Activity Would not Save Count 2 ..... 16

IV. LEAVE TO REPLEAD COUNTS 2, 5, 8, AND 12 SHOULD BE DENIED AS FUTILE BECAUSE THE DEFECTS IN THOSE COUNTS ARE SUBSTANTIVE AND CANNOT BE CURED BY ANY AMENDMENT ..... 17

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**PAGES**

## CASES

*Antoine v. SUNY Downstate Medical Center*
No. 21-CV-443. ECF No. 69-1 at 2-3 (2d Cir. Dec. 22, 2021) ........ 15

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........ 4

*Aykac v. City of New York*,
221 A.D.3d 494, 495 (1st Dep't 2023) ........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ........ 5

*Bistreich v. City of New York*,
191 A.D.3d 554 (1st Dep't 2021) ........ 6, 9

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) ........ 8

*Cadet v. Ayers*,
203 A.D.3d 539, 539 (1st Dep't 2022). ........ 11

*Charkhy v. Altman*,
252 A.D.2d 413, 414 (1st Dep't 1998) ........ 9, 10, 11

*Chung v. City University of New York*,
605 F. App'x 20, 20 (2d Cir. 2015) ........ 14

*Cuoco v. Moritsugu*,
222 F.3d 99, 112 (2d Cir. 2000) ........ 17, 20

*Diluglio v Liberty Mut. Group, Inc.*,
230 A.D.3d 643, 646 (2d Dep't 2024) ........ 16

*Doc. Techs., Inc. v. West*,
No. 17-CV-2659, ECF No. 107 at 8- 9(2d Cir. Apr. 24, 2018) ........ 18

*Foman v. Davis*,
371 U.S. 178, 182 (1962) ........ 17

*Forras v. Rauf*,
39 Misc.3d 1215(A) (N.Y. Co. Sup. Ct. 2012) .......... 10

*Forrest v. Jewish Guild for the Blind*,
309 A.D.2d 546 (1st Dep't 2003) .......... 16

*Garrand Bros. LLC v. American Honda Motor Co.*,
No. 23-CV-7343, ECF No. 73 (2d Cir. Nov. 6, 2024) .......... 18

*Gould v. Rempel*,
99 A.D.3d 759, 760 (2d Dep't 2012) .......... 10, 12

*Hardwick v. Auriemma*,
116 A.D.3d 465, 468 (1st Dep't 2014) .......... 6, 7

*Jackson v. Amazon.com, Inc.*,
No. 25-CV-72, ECF No. 61 (2d Cir. Mar. 17, 2026) .......... 18

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, PC*,
716 F.3d 10, 17 (2d Cir. 2013) .......... 15

*Kotcher v. Rosa & Sullivan Appliance Center, Inc.*
957 F.2d 59, 65 (2d Cir. 1992) .......... 13

*Krause v. Lancer & Loader Group, LLC*.,
40 Misc. 3d 385, 398-399 (Sup. Ct. N.Y. Cnty. 2013) .......... 8

*Lilly v. State of New York,*
249 A.D.3d 613 (1st Dep't 2026) .......... 6, 8

*Lore v. City of Syracuse*,
670 F.3d 127, 157 (2d Cir. 2012) .......... 13

*Matter of Medical Express Ambulance Corp. v. Kirkland*,
79 AD3d 886 (2d Dep't 2010) .......... 8

*Okoli v. Paul Hastings LLP*,
117 A.D.3d 539, 540 (1st Dep't 2014) .......... 10, 11, 12

*Pentech Int'l, Inc. v. Wall Street Clearing Co.*,
983 F.2d 441, 445 (2d Cir. 1993) .......... 9

*Perez v. Y & M Transp. Corp.*,
219 A.D.3d 1449, 1450 (2d Dep't 2023) .......... 7

*Qorrolli v. Metro. Dental Assocs.*,
124 F.4th 115 (2d Cir. 2024) .......... 13, 16

*Reed v. Fortive Corp.*,
No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) .......... 13, 17

*Strauss v. N.Y. State Dep't of Educ.*,
26 A.D.3d 67, 73 (3d Dep't 2005) .......... 6

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493, 505 (2d Cir. 2014) .......... 17, 20

*Tomka v. Seiler Corp.*,
66 F.3d 1295, 1317 (2d Cir. 1995) .......... 8, 9

*United Natl. Ins. Co. v. Waterfront N.Y. Realty Corp.*,
994 F.2d 105, 108 (2d Cir. 1993) .......... 10

*Unotti v. American Broadcasting Cos.,*
180 Misc. 2d 543, 546 (Sup. Ct. N.Y. Co. 1999) .......... 15

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72, 90 (2d Cir. 2015) .......... 13

*Waters v. Town Sports Intern. Holdings, Inc.*,
44 Misc.3d 1217(A) (N.Y. Co. Sup Ct. 2014) .......... 10

**STATUTES**

Title V Title VII of the Civil Rights Act of 1964 of the Civil Rights Act of 19.......1, 2, 5, 13, 16

N.Y. Executive Law § 296(6) .......... 1, 5, 6, 7, 8, 15

N.Y. Executive Law § 296(1)(e) .......... 1

N.Y.C. Administrative Code § 8-107(6) .......... 1, 5, 18

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 1, 4, 5, 15, 17

Fed. R. Civ. P. 15(a) .......... 10, 17, 20

N.Y. C.P.L.R. 3211(a)(7) .......... 5, 6, 8, 15

## PRELIMINARY STATEMENT

Defendants TraxNYC Corp. ("Trax") and Maksud Agadjani ("Agadjani") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss four[1] of the eighteen causes of action pleaded in the Complaint: the Second Cause of Action (Title VII retaliation, against Trax), the Fifth Cause of Action (aiding and abetting under N.Y. Executive Law § 296(6), against Agadjani), the Eighth Cause of Action (aiding and abetting under N.Y.C. Administrative Code § 8-107(6), against Agadjani), and the Twelfth Cause of Action (civil assault, against Agadjani).

Each of the four challenged counts fails on the Complaint's own allegations. No factual dispute needs resolving, and no discovery can change the result.

Counts 5 and 8 plead that Agadjani aided and abetted discrimination. But the Complaint identifies Agadjani as the founder, owner, and chief executive officer of Trax, the decisionmaker with authority to hire and fire (Compl. ¶¶ 15-16) and attributes every act of harassment, every message, and the suspension of pay to him personally. New York law forecloses the theory the Complaint pleads: an individual cannot aid and abet his own violation of the Human Rights Law. Because Agadjani is the only actor alleged to have discriminated, there is no separate primary violation for him to have assisted.

Count 12 pleads civil assault and by its own terms rests on "verbal attacks, text messages and social media posts." (Compl. ¶ 226.) New York requires apprehension of *imminent* harmful or offensive contact. Threats of future harm transmitted by text, and statements broadcast to a social-media audience do not satisfy that element and words unaccompanied by a menacing physical act ordinarily will not state the claim at all.

[1] Defendants do not, at this time, seek dismissal of the remaining fourteen causes of action on this motion, and they will answer those counts as required once the Court resolves this motion.

Count 2 pleads Title VII retaliation "for complaining of the aforementioned violations." (Compl. ¶ 186.) The Complaint elsewhere alleges that Plaintiff "had no one to complain to and no one higher up that could end the abuse." (Compl. ¶ 93.) No internal complaint, report, or charge preceding the alleged retaliation appears anywhere in the pleading. The count therefore fails on its first element, defeated by the Complaint's own facts.

The defects in these counts are purely legal, not the product of imprecise drafting: no amendment can make Agadjani a second actor, and no amendment can convert remote threats of future harm into apprehension of imminent contact. Defendants respectfully request that the Court dismiss Counts 2, 5, 8, and 12 with prejudice.

## STATEMENT OF FACTS

The following allegations are drawn from the Complaint and are assumed true for purposes of this motion only. Defendants do not concede their truth and reserve all defenses.

**A. The parties and the employment relationship.** Plaintiff Melisa Kulla is a 27-year-old woman of Albanian descent. (Compl. ¶ 10.) Trax is a New York corporation operating in the Diamond District. (Compl. ¶¶ 11-12.) Agadjani is the founder, owner, and chief executive officer of Trax. (Compl. ¶ 15.) He "had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, and was a decisionmaker at the company." (Compl. ¶ 16.) Plaintiff began working for Trax as a Sales Associate on July 15, 2022, and was promoted to Sales Manager on January 1, 2024, in which role she managed approximately thirty employees. (Compl. ¶¶ 25, 28-29.) The two dated briefly from about September 2022 until approximately December 2022, and Plaintiff ended the relationship. (Compl. ¶¶ 32-33.)

**B. The alleged 2024 conduct.** Plaintiff alleges that in or around September 2024 Agadjani resumed pursuing her romantically, that she declined, and that on one occasion he

attempted to kiss her in his office, at which point she "immediately pulled away and reiterated that she was not interested in a relationship." (Compl. ¶¶ 37-41.) She alleges he called her an "Albanian Monkey" on multiple occasions. (Compl. ¶ 44.) On or about October 1, 2024, Agadjani proposed marriage, which Plaintiff, in turn, declined. (Compl. ¶¶ 61-62.)

**C. The November 2024 text messages.** On November 23, 2024, a day Plaintiff was not scheduled to work, Agadjani called her; she did not answer but texted to remind him it was her day off. (Compl. ¶¶ 68-69.) Agadjani responded with a lengthy barrage of vulgar text messages that included the statement, "Wait till I see you." (Compl. ¶¶ 70-71.) Plaintiff replied by text, and further hostile messages followed. (Compl. ¶¶ 72-75.)

**D. The January 2025 suspension and resignation.** In or around early January 2025, after Plaintiff received an invitation from a celebrity client, Agadjani yelled at and insulted her. (Compl. ¶¶ 78-88.) The following day Plaintiff texted a request for a few days off, to which Agadjani responded, "Your work and your pay is suspended." (Compl. ¶¶ 90-91.) The Complaint then alleges: "Plaintiff had no one to complain to and no one higher up that could end the abuse." (Compl. ¶ 93.) Plaintiff informed Defendants that she had no option but to resign. (Compl. ¶ 97.) The Complaint does not allege that Plaintiff made any internal complaint, report, or charge of discrimination to Trax before her resignation.

**E. The alleged post-employment conduct.** Plaintiff alleges she surrendered a professional Instagram account (Compl. ¶ 100), that multiple businesses told her they would not work with her because it would upset Defendants (Compl. ¶ 101), and that Agadjani refused to let her contact vendors (Compl. ¶ 105). In February 2025, after Plaintiff filled an order for a client, Agadjani sent a text accusing her of "stealing my fucking customers" (Compl. ¶ 110) and later wrote, "You need to be put in your place[,] I will do it Melisa." (Compl. ¶ 112.)

**F. The street encounters.** On April 22, 2025, Plaintiff saw Agadjani while walking in the Diamond District with a friend. (Compl. ¶ 114.) The Complaint alleges Agadjani "screamed: 'who are you looking at you bitch. Leverage whore!'" (Compl. ¶ 115), and that he "briefly walked away but doubled-back from the other side of the street, yelling to Nhaisse: 'Be careful from that bitch Saul because she will use you too.'" (Compl. ¶ 116.) On a later occasion, Agadjani saw Plaintiff speaking with a vendor and "began shouting profanities in Russian at both Plaintiff and the vendor." (Compl. ¶ 120.) Plaintiff began recording and Agadjani continued to yell. (Compl. ¶¶ 123-124.) The Complaint does not allege that Agadjani approached Plaintiff, advanced upon her, or made any physical contact or gesture toward her during either encounter.

**G. The social-media statements.** Beginning May 8, 2025, Agadjani published videos and Instagram stories to his followers concerning former employees and referring to Plaintiff by name. (Compl. ¶¶ 126-132.) On May 10, 2025, he texted a former co-worker about Plaintiff. (Compl. ¶ 144.) He then called Plaintiff repeatedly and sent further messaging-platform barrages. (Compl. ¶¶ 145-149.) On May 15, 2025, he sent further messages. (Compl. ¶¶ 152-153.) Plaintiff filed a police report and obtained an Order of Protection. (Compl. ¶ 155.)

**H. Procedural posture.** Plaintiff filed a charge with the EEOC on September 29, 2025, received a Notice of Right to Sue dated April 21, 2026 and filed this action on June 23, 2026. (Compl. ¶ 8; Dkt. 1.) The Complaint pleads eighteen causes of action. (Compl. ¶¶ 179-258.)

## STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555.

The Court accepts well-pleaded factual allegations as true but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Counts 5, 8, and 12 rest on labels of that kind, while Count 2 rests on a legal conclusion the Complaint's own factual allegations contradict.

Counts 5, 8, and 12 arise under New York law and are before the Court on supplemental jurisdiction. New York substantive law supplies the elements of those claims, while the federal plausibility standard governs the sufficiency of the pleading. Because CPLR 3211(a)(7) is New York's analogue to Rule 12(b)(6), New York decisions dismissing these claims at the pleading stage are persuasive on both the substance of the elements and the propriety of resolving them before an answer.

## ARGUMENT

### I. COUNTS 5 AND 8 MUST BE DISMISSED BECAUSE AGADJANI IS THE ONLY ACTOR ALLEGED TO HAVE DISCRIMINATED AND NEW YORK LAW DOES NOT PERMIT AN INDIVIDUAL TO AID AND ABET HIS OWN VIOLATION OF THE HUMAN RIGHTS LAWS

Count 5 pleads aiding and abetting under Executive Law § 296(6) and Count 8 pleads the parallel claim under N.Y.C. Administrative Code § 8-107(6). Both are asserted against Agadjani alone. (Compl. ¶¶ 193-195, 202-206.) Both fail for the same reason: the accessory theory they invoke requires a primary violation by someone else and the Complaint alleges no other actor.

### A. New York Law Forecloses an Aiding-and-Abetting Claim Premised on the Defendant's Own Conduct

This principle is well-settled across the Departments. The Third Department has held "that individuals cannot be held liable under Executive Law § 296 (6) for aiding and abetting their own violations of the Human Rights Law." *Strauss v. N.Y. State Dep't of Educ.*, 26 A.D.3d 67, 73 (3d Dep't 2005). As the court in *Strauss* explained, the accessory provision, by its terms, reaches assistance rendered to another person's unlawful act. *Id*.

The First Department, too, has stated the rule flatly and unambiguously: "an aiding and abetting claim cannot be based on an individual's own conduct." *Bistreich v. City of New York*, 191 A.D.3d 554 (1st Dep't 2021) (citing *Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014)).

The rule is applied on the pleadings, not reserved for summary judgment. In *Lilly v. State of New York*, the First Department reviewed an order denying a pre-answer motion to dismiss and modified it to dismiss the aiding-and-abetting causes of action under both the State and City Human Rights Laws, holding: "Appellant is the only one alleged to have engaged in discriminatory conduct, and he may not be held liable for aiding and abetting his own violations of the State and City HRLs." *Lilly v. State of New York* 249 A.D.3d 613 (1st Dep't 2026) (citing *Hardwick*, 116 A.D.3d at 468). Notably, the plaintiff's direct discrimination claims survived; only the accessory counts fell.

The Second Department has reached the same result on a CPLR 3211(a) motion, holding that "the complaint fails to state a cause of action for aiding and abetting discrimination insofar as asserted against D'Amico, as he may not be held liable for aiding and abetting his own violation of the NYCHRL." *Perez v. Y & M Transp. Corp.*, 219 A.D.3d 1449, 1450 (2d Dep't 2023) (citing *Hardwick*, 116 A.D.3d at 468).

### B. The Complaint Pleads Agadjani as the Sole Actor, Leaving No Primary Violation for Him to Have Assisted

The application here is direct. Agadjani is pleaded as the founder, owner, and CEO of Trax, and as "a decisionmaker at the company" with "the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment." (Compl. ¶¶ 15-16.) Every act of alleged discrimination is his: the renewed romantic pursuit and the attempted kiss (Compl. ¶¶ 37-40), the ethnic slur (Compl. ¶ 44), the marriage proposal (Compl. ¶ 61), the text-message barrages (Compl. ¶¶ 71, 73), and the suspension of Plaintiff's work and pay (Compl. ¶ 91). No supervisor, manager, co-worker, or other agent of Trax is alleged to have discriminated against Plaintiff. Indeed, the Complaint alleges there was "no one higher up" at all. (Compl. ¶ 93.)

Count 5 says only that Agadjani violated § 296(6) "by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct." (Compl. ¶ 195.) That is a recitation of the statutory verbs, unaccompanied by any allegation identifying whose conduct Agadjani assisted. Under *Iqbal*, such a "[t]hreadbare recital[] of the elements of a cause of action" does not survive a motion to dismiss. 556 U.S. at 678.

### C. Count 8's Framing that Agadjani Aided Trax Does Not Save the Claim, Because Trax's Alleged Liability is Derivative of Agadjani's Own Conduct

Count 8 attempts a different framing: it alleges that "Agadjani aided and abetted Trax's discriminatory practice, harassment and hostile work environment." (Compl. ¶ 205.) The presence of a corporate employer in the caption does not supply the missing second actor. Trax is a corporation; it acts only through people. As made abundantly clear by Plaintiff's Complaint, the only person through whom Trax is alleged to have discriminated is Agadjani. Trax's alleged liability is therefore wholly derivative of Agadjani's conduct and an allegation that Agadjani assisted Trax reduces to an allegation that Agadjani assisted himself.

*Krause v. Lancer & Loader Group, LLC* is illustrious to this point. There, on a CPLR 3211(a)(7) pre-answer motion, the plaintiff sued both an entity employer and its president, who had personally fired her. The court dismissed the aiding-and-abetting cause of action against the individual, holding that "courts have held that an individual cannot aid and abet his own alleged discriminatory conduct," and that "since Levine's alleged actions give rise to the discrimination claim, he cannot be held liable for aiding and abetting, and this claim fails." *Krause v. Lancer & Loader Group, LLC* 40 Misc. 3d 385, 398-399 (Sup. Ct. N.Y. Cnty. 2013); *see also Matter of Medical Express Ambulance Corp. v. Kirkland*, 79 AD3d 886 (2d Dep't 2010) (supervisor whose conduct gave rise to plaintiff's sexual discrimination claim cannot be held liable under Executive Law § 296 (6) for aiding and abetting his own violation of the Human Rights Law).

*Krause* and similar precedent clearly disposes of any suggestion that the accessory claim is an alternative route to the same defendant: direct liability and accessory liability are distinct theories and pleading the same primary conduct twice does not create the second one. *Lilly*, *supra*, makes the same point at the appellate level, dismissing the accessory counts against a sole actor while the direct claims proceeded. 249 A.D.3d 613 (1st Dep't 2026).

**D. *Tomka* Does Not Permit These Counts to Proceed**

Plaintiff may invoke *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), which read § 296(6) to permit personal liability against "a defendant who actually participates in the conduct giving rise to a discrimination claim." *Id.* at 1317. *Tomka* does not carry Counts 5 and 8 for two independent reasons.

*First*, on this question of New York statutory construction, the New York appellate courts have declined to follow it. The First Department addressed *Tomka* directly and held: "To the

extent *Tomka* … and its progeny hold otherwise, we decline to follow them." *Bistreich*, 191 A.D.3d 554 (1st Dep't 2026). Moreover, where a federal court sits in supplemental jurisdiction over New York claims, the uniform position of the New York appellate courts on the meaning of a New York statute is what governs the analysis. *See generally Pentech Int'l, Inc. v. Wall Street Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993).

*Second*, *Tomka* is factually inapposite. It involved multiple distinct individual participants, so the person charged as an aider and abettor and the person charged as the primary violator were different people. Nothing in *Tomka* addresses a single actor charged with abetting his own conduct, which is the theory the Complaint pleads here.

### E. The Defect Cannot be Cured

This is not a pleading-detail problem. No additional factual allegation can make Agadjani a second person, and the Complaint's own theory, that Agadjani was the owner and CEO who personally did everything and to whom there was "no one higher up" (Compl. ¶ 93), forecloses the existence of another primary violator. Counts 5 and 8 should be dismissed with prejudice.

## II. COUNT 12 MUST BE DISMISSED BECAUSE IT RESTS BY ITS OWN TERMS ON REMOTE VERBAL AND ELECTRONIC THREATS OF FUTURE HARM, WHICH DO NOT SATISFY THE IMMINENCE ELEMENT OF CIVIL ASSAULT

### A. Civil Assault Requires Apprehension of Imminent Conduct

Under New York law, a civil assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dep't 1998) (quoting *United Natl. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)). *Charkhy* drew the distinction that controls this count. Rejecting a collateral-estoppel

argument built on a criminal extortion plea, the First Department held that "there is no identity of issues between the criminal proceedings against defendant and the instant civil proceedings, since the former concerned threats of future harm, whereas the latter concerns fear of imminent harm and *actual contact* …." *Id.* (emphasis supplied). Threats of future harm and apprehension of imminent contact are not the same thing, and only the latter states a claim.

The pleading must allege intentional "physical conduct placing the plaintiff in imminent apprehension of harmful contact," and "words, without some menacing gesture or act accompanying them, ordinarily will not be sufficient to state a cause of action alleging assault." *Gould v. Rempel*, 99 A.D.3d 759, 760 (2d Dep't 2012); *see also Waters v. Town Sports Intern. Holdings, Inc.*, 44 Misc.3d 1217(A) (N.Y. Co. Sup Ct. 2014) ("mere words or threats alone are insufficient to constitute an assault"); *Forras v. Rauf*, 39 Misc.3d 1215(A) (N.Y. Co. Sup. Ct. 2012) (pleading fails where it "poses no threat of immediate harmful contact"). *Gould* applied that rule to dismiss an assault claim where a supervisor entered the plaintiff's hotel room and screamed at her; even allegations that his face turned red did not suffice. *Gould*, 99 A.D.3d at 760.

The First Department reached the same conclusion on facts involving a live confrontation. In *Okoli v. Paul Hastings LLP*, the court affirmed dismissal because the alleged conduct, "which amounts to finger pointing and generalized yelling in the context of a heated deposition, is inappropriate behavior, not to be condoned, but, without more, is not the type of menacing conduct that may give rise to a reasonable apprehension of imminent harmful conduct needed to state an actionable claim of assault." 117 A.D.3d 539, 540 (1st Dep't 2014). *Okoli* is significant because the plaintiff there was in the same room as the defendant, face to face, and the claim still failed.

Courts resolve this element on the pleadings. In *Cadet v. Ayers*, the First Department reversed the denial of a motion to dismiss and directed dismissal of the assault claim, holding: "As a matter of law, on this record, plaintiff failed to state a cause of action for assault." 203 A.D.3d 539, 539 (1st Dep't 2022).

**B. Count 12 Identifies its Own Factual Basis as Remote and Verbal**

Count 12 alleges that Agadjani "intentionally placed Plaintiff in fear of imminent harmful or offensive contact by repeatedly threatening Plaintiff through verbal attacks, text messages and social media posts." (Compl. ¶ 226.) The count thus names the three channels on which it rests,[2] and each fails the imminence element.

The alleged text messages are threats of future harm delivered remotely. "Wait till I see you" (Compl. ¶ 71) is, on its face, contingent on a future meeting that had not occurred; it communicates the absence of a present confrontation. "You need to be put in your place[,] I will do it Melisa" (Compl. ¶ 112) is likewise a statement of future intent transmitted by text. These are precisely the "threats of future harm" that *Charkhy* distinguishes from "fear of imminent harm." 252 A.D.2d at 414. A person reading a text message is not in the presence of the sender, and no menacing physical act can accompany words delivered through a telephone.

The alleged social-media statements fail for the same reason and one more. They were published to an audience rather than directed at Plaintiff in her physical presence. (Compl. ¶¶

[2] The attempted kiss alleged at Paragraph 40 does not change the analysis. That allegation describes a completed past act from which Plaintiff "immediately pulled away" (Compl. ¶ 41); Count 12 does not identify it as a basis for the assault claim, which by its terms rests on "verbal attacks, text messages and social media posts" (Compl. ¶ 226); and Defendants do not challenge that allegation or the counts it supports on this motion.

126-132.) A video posted to followers is not a gesture made toward a plaintiff standing within reach.

The remaining category, "verbal attacks," is words. Under *Gould* and *Okoli*, words without an accompanying menacing act do not state the claim, even when delivered face to face and at volume. *Gould*, 99 A.D.3d at 760; *Okoli*, 117 A.D.3d at 540.

**C. The Street Encounters Do Not Supply the Missing Physical Act**

The Complaint also describes two in-person street encounters. On April 22, 2025, Agadjani allegedly "screamed" at Plaintiff, then "briefly walked away but doubled-back from the other side of the street, yelling to Nhaisse." (Compl. ¶¶ 115-116.) On a later occasion, he allegedly "began shouting profanities in Russian at both Plaintiff and the vendor" and continued to yell while Plaintiff recorded. (Compl. ¶¶ 120-124.) In neither account does the Complaint allege that Agadjani approached Plaintiff, advanced upon her, closed the physical distance between them, or made any gesture toward her person. The second encounter is described as directed at Plaintiff and a vendor together; the first describes Agadjani doubling back from across a street to address her companion. This is generalized yelling from a distance, which *Okoli* holds insufficient even when the parties share a room. 117 A.D.3d at 540.

Because the conduct on which Count 12 rests cannot, as a matter of law, constitute apprehension of imminent contact, and because no repleading can convert remote threats of future harm into imminence, Count 12 should be dismissed with prejudice.

## III. COUNT 2 MUST BE DISMISSED BECAUSE IT PLEADS RETALIATION FOR A COMPLAINT THAT THE COMPLAINT'S OWN ALLEGATIONS ESTABLISH WAS NEVER MADE

### A. A Title VII Retaliation Plaintiff Must Plausibly Allege Protected Activity of Which the Employer was Aware

To state a Title VII retaliation claim, a plaintiff must show "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115 (2d Cir. 2024) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). At the pleading stage, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice." *Reed v. Fortive Corp.*, No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

The first two elements are linked: opposition must actually be communicated, because an employer cannot be aware of, or retaliate for, opposition it never received. That is why *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, on which Plaintiff may rely, found protected activity on the specific ground that a *complaint was in fact made*: "Kotcher had not filed a formal agency complaint before she was fired, but she did make an internal complaint to company management, protesting the sexually harassing actions of her supervisor. Surely this opposition to the unlawful practice of sexual harassment is protected activity within the policies of Title VII." *Kotcher v. Rosa & Sullivan Appliance Center, Inc.* 957 F.2d 59, 65 (2d Cir. 1992). *Kotcher*

establishes that protected activity is not confined to formal charges. It presupposes, however, that opposition was communicated to someone. That is the fact this Complaint disclaims.

### B. Paragraph 186 Pleads a Complaint, and Paragraph 93 Pleads That No Complaint Was Possible

Count 2 alleges that Trax "engaged in unlawful employment practices by retaliating against and terminating Plaintiff for complaining of the aforementioned violations." (Compl. ¶ 186.) The Complaint identifies no such complaint anywhere. To the contrary, in the Material Facts, it alleges that "Plaintiff had no one to complain to and no one higher up that could end the abuse." (Compl. ¶ 93.) The pleading contains no allegation of an internal complaint to management, no report to human resources, no charge, and no communication to Trax opposing discrimination at any point before the alleged retaliation. The only administrative filing pleaded is the EEOC charge of September 29, 2025 (Compl. ¶ 8), *which postdates* Plaintiff's January 2025 resignation (Compl. ¶ 97) and therefore cannot be the protected activity for which the suspension of pay or the constructive discharge was allegedly imposed.

Count 2 is thus self-defeating: the count's operative allegation is negated by the pleading's own facts. Courts in this Circuit dismiss retaliation claims on that basis. In *Chung v. City University of New York*, the Second Circuit affirmed the rejection of a retaliation pleading, explaining that "[b]ecause Plaintiff's proposed amended pleading itself belies any inference of retaliatory intent, we do not address the adequacy of the adverse employment action alleged," and concluding that "[t]he proposed pleading fails to state a plausible retaliation claim." 605 F. App'x 20, 20 (2d Cir. 2015) (summary order). Where the complaint's own narrative forecloses the theory, the court need not proceed through the remaining elements.

The Second Circuit has likewise affirmed dismissal under Rule 12(b)(6) where the pleading did not allege that the plaintiff communicated a complaint of discrimination. In *Antoine v. SUNY Downstate Medical Center*, the court held that the plaintiff's internal complaints were not protected activity because Plaintiff "does not allege that he 'complained, or even suggested, that [ ]he was being discriminated against because of' his race," and concluded that the "retaliation claim based on his internal complaints was properly dismissed." No. 21-CV-443. ECF No. 69-1 at 2-3 (2d Cir. Dec. 22, 2021) (summary order) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, PC*, 716 F.3d 10, 17 (2d Cir. 2013)). The defect here is more basic than in *Antoine*: the plaintiff there at least alleged that complaints were made, and the claim failed because their content did not identify discrimination. Here, no complaint of any kind is alleged.

New York courts apply the same approach on the state analogue to Rule 12(b)(6). In *Unotti v. American Broadcasting Cos*., the court dismissed a retaliation claim under CPLR 3211(a)(7) because "[t]he complaint does not allege that plaintiff either opposed any practices forbidden, or testified or assisted in or brought any proceeding under the relevant provisions of the Executive Law." 180 Misc. 2d 543, 546 (Sup. Ct. N.Y. Co. 1999), *aff'd*, 273 A.D.2d 68 (1st Dep't 2000). The First Department affirmed on the ground that the plaintiff "failed to state a cause of action for retaliation under the State Human Rights Law (Executive Law § 296 [1] [e]) since he did not allege that he had been retaliated against for participating in a formal Human Rights Law proceeding." 273 A.D.2d at 68. Courts have similarly held that generalized complaints (as opposed to those specifically related to discriminatory practices) would not constitute protected activity and therefore would not support a retaliation claim. *See*, *e.g.*, *Aykac v. City of New York*, 221 A.D.3d 494, 495 (1st Dep't 2023) ("plaintiff's vague, generalized

complaints about Dr. Eisikowitz's treatment of him to an unspecified person or authority do not constitute protected activity"); *Forrest v. Jewish Guild for the Blind*, 309 A.D.2d 546 (1st Dep't 2003); *see also Diluglio v Liberty Mut. Group, Inc.*, 230 A.D.3d 643, 646 (2d Dep't 2024) ("the defendants met their burden of demonstrating that the plaintiff could not make out a prima facie case of retaliation by establishing that the plaintiff's complaints [] did not relate to discriminatory practices prohibited under the NYSHRL, and that he therefore did not engage in a protected activity"). The principle these authorities share is straightforward and controls this count: a court looks to what the pleading's facts establish, not to the label the plaintiff attaches to the claim and dismisses where those facts foreclose the protected-activity element.

Defendants do not contend that any of these decisions presents the identical fact pattern. The point is the governing principle they apply, and it resolves Count 2: opposition must be communicated and the employer must be aware of it, and Paragraph 93 forecloses both.

**C. Recasting the Rejection as Protected Activity Would Not Save Count 2**

Anticipating opposition, Defendants address the theory Plaintiff may advance in place of the complaint she did not plead: that her rejection of Agadjani's advances was itself the protected activity. That theory fails twice over.

*First*, it is not the theory Count 2 pleads. The count specifically pleads retaliation "for complaining." (Compl. ¶ 186.)

*Second,* the Second Circuit has not adopted this theory under Title VII. In *Qorrolli*, the court stated: "Although this court has not yet ruled on whether rejecting a workplace harasser's sexual advances can qualify as a protected activity under Title VII and the NYSHRL, an issue over which district courts have disagreed, we have ruled that such a rejection can constitute 'an action opposing [plaintiff's] employer's discrimination' under the NYCHRL." 124 F.4th 115.

The court found the plaintiff's verbal and nonverbal rejections there "insufficiently clear, as a matter of law, to constitute a protected activity." *Id.* The Second Circuit took the same course in *Reed*, affirming a Rule 12(b)(6) dismissal and observing that "the parties dispute whether declining a sexual advance counts as opposing an unlawful employment practice" and that "the circuits disagree on this question," before holding that "regardless of whether rejecting a sexual advance can ever count as opposing an unlawful employment practice, Reed has failed to allege adequately that she had a reasonable, good-faith belief that McCauley's conduct violated the law or that her conduct constituted opposition to unlawful conduct." No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) (summary order).

Count Two fails and should be dismissed.

## IV. LEAVE TO REPLEAD COUNTS 2, 5, 8, AND 12 SHOULD BE DENIED AS FUTILE BECAUSE THE DEFECTS IN THOSE COUNTS ARE SUBSTANTIVE AND CANNOT BE CURED BY ANY AMENDMENT

The four challenged counts do not fail because Plaintiff pleaded too little. They fail because the facts she chose to plead affirmatively defeat them.

Rule 15(a) directs that leave to amend be freely given when justice so requires but the Supreme Court has identified *futility of amendment* as a legitimate ground for denial. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Second Circuit has applied that principle in the form that governs here: "The problem with [the] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave may accordingly be denied "for good reason, including futility," and "[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505

(2d Cir. 2014). The Second Circuit continues to apply that rule. *See Jackson v. Amazon.com, Inc.*, No. 25-CV-72, ECF No. 61 (2d Cir. Mar. 17, 2026) (summary order); *Garrand Bros. LLC v. American Honda Motor Co.*, No. 23-CV-7343, ECF No. 73 (2d Cir. Nov. 6, 2024) (summary order). Dismissal with prejudice is proper "in the absence of any indication that [DTI] could -- or would -- provide additional allegations" sufficient to state a claim, particularly where the plaintiff "had ample opportunity" to plead. *Doc. Techs., Inc. v. West*, No. 17-CV-2659, ECF No. 107 at 8- 9(2d Cir. Apr. 24, 2018) (summary order).

Plaintiff has had that opportunity and used it fully. The Complaint runs thirty-five pages and 258 paragraphs. (Dkt. 1; Compl. ¶¶ 179-258.) It recounts months of conduct in granular detail, reproducing text-message barrages verbatim across whole paragraphs (Compl. ¶¶ 71, 73, 110, 146-149, 152-153), quoting social-media videos and Instagram stories at length (Compl. ¶¶ 126-134, 139-143), and cataloguing street encounters, third-party communications, and post-employment events (Compl. ¶¶ 114-124, 158-163). Whatever else may be said of this pleading, it is not one that withheld facts. Plaintiff cannot identify additional allegations of the same character that would repair Counts 2, 5, 8, and 12, because the obstacles to those counts are not evidentiary gaps. They are legal.

Counts 5 and 8 illustrate the point most starkly. As shown in Point I, the accessory provisions of the State and City Human Rights Laws require a primary violation by someone other than the defendant charged as the aider and abettor. The Complaint pleads Agadjani as the founder, owner, and chief executive officer of Trax, who "had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment," and identifies no other person who discriminated against her. (Compl. ¶¶ 15-16.) It affirmatively alleges the opposite: that "Plaintiff had no one to complain to and no one higher up that could end the abuse." (Compl. ¶ 93.) No

allegation Plaintiff could add would make Agadjani a second person. An amendment naming additional conduct by Agadjani would deepen the defect rather than cure it, because every additional act attributed to him is another act of the sole primary violator. The problem is substantive, and better pleading will not reach it.

Count 12 fails for a defect of the same order. As shown in Point II, civil assault requires apprehension of imminent harmful or offensive contact. Count 12 identifies its own basis as threats conveyed "verbal attacks, text messages and social media posts." (Compl. ¶ 226.) A message read on a telephone and a video broadcast to millions of followers are, by their nature, communications made outside the recipient's physical presence. No amendment can relocate them into it. Plaintiff might plead further messages, further posts, or further insults, and the imminence element would remain unmet for the identical reason. The channels she selected are incompatible with the element the claim requires, and that incompatibility is a matter of law, not of pleading detail.

Count 2 is no different. As shown in Point III, a Title VII retaliation claim requires protected activity of which the employer was aware. Count 2 pleads retaliation "for complaining of the aforementioned violations" (Compl. ¶ 186), while Paragraph 93 alleges that Plaintiff had no one to complain to and no one higher up who could end the abuse. Plaintiff could abandon Paragraph 93 on a repleading only by contradicting the narrative on which her surviving claims depend, including her constructive-discharge and quid pro quo theories, which rest on the premise that Agadjani held unchecked authority and that no recourse existed above him. The admission is not an isolated sentence; it is load-bearing. A pleading that removed it would be at war with itself, and one that retained it would fail Count 2 for the same reason it fails now.

Defendants therefore do not ask the Court to weigh the liberality of Rule 15(a) against Plaintiff. That standard may be applied in full, and these counts still cannot be saved. Where the deficiency lies in the substance of the claim rather than in the manner of its statement, repleading is futile and the request should be denied. *Cuoco*, 222 F.3d at 112; *TechnoMarine*, 758 F.3d at 505. That conclusion follows with added force where, as here, the plaintiff has already set out her factual account in exhaustive detail and has pleaded the very facts that defeat the counts. Defendants respectfully request that the Court dismiss Counts 2, 5, 8, and 12 with prejudice and without leave to replead.

## CONCLUSION

For the foregoing reasons, Defendants TraxNYC Corp. and Maksud Agadjani respectfully request that the Court dismiss the Second, Fifth, Eighth, and Twelfth Causes of Action of the Complaint with prejudice. Defendants do not, at this time, seek dismissal of the remaining fourteen causes of action on this motion and will answer them as required upon the Court's resolution of this motion.

Dated: September 7, 2026

Respectfully submitted,

____________________

Jason Goldman, Esq.
The Law Offices of Jason Goldman
275 Madison Avenue, 35th Fl.
New York, New York 10016
212.466.6617
jg@jasongoldmanlaw.com
*Counsel for Defendants*