UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISA KULLA,

Plaintiff,

vs.

TRAXNYC CORP. and MAKSUD AGADJANI, in his individual and official capacities,

Defendants.

Civil Action No. 1:26-cv-05294-LJL
Hon. Lewis J. Liman

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE SECOND, FIFTH, EIGHTH, AND TWELFTH CAUSES OF ACTION**

The Law Offices of Jason Goldman
275 Madison Avenue, 35th Fl.
New York, New York 10016
212.466.6617
jg@jasongoldmanlaw.com

## PRELIMINARY STATEMENT

Plaintiff's opposition does not defend the claims the Complaint pleads. It defends different ones. The opposition rebuilds Count 12 around an office advance the count never mentions and a street encounter in which Agadjani yelled from across the street. The opposition rebuilds Count 2 around personal messages ending a relationship. Neither reconstruction states a claim, and repleading cannot cure either one.

**Counts 5 and 8.** "Plaintiff does not oppose dismissal of the Fifth and Eighth Causes of Action." (Plaintiff's Memorandum of Law in Opposition ("Opp."), Dkt. No. 14, at 16.) She proposes no amendment to either count, (Opp. at 15-16.), nor could one cure them. Counts 5 and 8 should be dismissed with prejudice.

**Count 12.** Plaintiff now concedes that the text messages and social-media posts on which Count 12 rests are not offered as freestanding assaults. (Opp. at 7.) She relies instead on (i) a rebuffed office advance that Count 12 does not invoke and that pleads neither intent nor apprehension, and (ii) two street encounters in which Agadjani yelled but never approached her, advanced on her, or gestured toward her. New York law requires a menacing act that accompanies the words. The Complaint pleads none.

**Count 2.** Plaintiff identifies her "complaints" as the messages at Paragraphs 72, 74, 90, and 94. Those messages are quoted verbatim in the Complaint. They decline a romantic relationship, say goodbye, and ask for sick leave. None signals opposition to sex discrimination, *which is what Title VII protects*. Her fallback theory, that rejecting an advance is itself protected activity, is not what Count 2 pleads, and the Second Circuit has twice declined to adopt it.

## ARGUMENT

The Court accepts well-pleaded facts as true, but "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Measured against that standard, Counts 2 and 12 fail on the facts the Complaint actually pleads.

## POINT I

## THE COMPLAINT PLEADS NO MENACING ACT ACCOMPANYING ANY THREAT, AND NO APPREHENSION OF IMMINENT CONTACT

### A. Threats of Future Harm Delivered by Text and Social Media Do Not Satisfy the Imminence Element, and Plaintiff No Longer Contends Otherwise.

Civil assault requires fear of *imminent* harmful or offensive contact. A threat of future harm is a different thing. In *Charkhy v. Altman*, the First Department refused to treat an extortion plea as establishing assault because "the former concerned threats of future harm, whereas the latter concerns fear of imminent harm and actual contact …." 252 A.D.2d 413, 414 (1st Dep't 1998). Plaintiff stresses that this passage arose in a collateral-estoppel analysis. (Opp. at 6.) That context is the point. The court found no identity of issues because the two inquiries are distinct and only the second states a claim for assault. Under the same principle, "words, without some menacing gesture or act accompanying them, ordinarily will not be sufficient to state a cause of action alleging assault." *Gould v. Rempel*, 99 A.D.3d 759, 760 (2d Dep't 2012). The First Department resolves the element on the pleadings and has reversed a denial of dismissal where, "As a matter of law, on this record, plaintiff failed to state a cause of action for assault." *Cadet v. Ayers*, 203 A.D.3d 539, 539 (1st Dep't 2022). The Southern District has applied the same rule under Rule 12(b)(6), dismissing a New York assault claim where the pleading supplied no menacing gesture or act. *Sullivan v. Gelb*, No. 1:23-cv-05194-GHW, slip op. at 28 (S.D.N.Y. April 25, 2024).

The two threats Plaintiff relies on are written statements of future intent. On November 23, 2024, Agadjani allegedly texted "Wait till I see you" (Compl. ¶¶ 68-71). In February 2025, he allegedly wrote "You need to be put in your place[,] I will do it Melisa" (Compl. ¶ 112).

Plaintiff argues that a threat "does not become less imminent when the speaker appears." (Opp. at 1.) That inverts the element. *Gould* requires the menacing gesture or act to *accompany* the words. A text sent five months before a chance street encounter does not accompany anything that happened on that street. On Plaintiff's theory, one threatening message would convert every later sighting into an assault, whatever the sender actually did. *Charkhy* and *Gould* foreclose that theory.

Plaintiff also abandons two of the three channels Paragraph 226 names. She concedes that the text messages and posts "are not offered as freestanding assaults" and serves them up only as "context." (Opp. at 7.) The social-media posts were broadcast to followers, not delivered to Plaintiff in Agadjani's physical presence. (Compl. ¶¶ 126-132.) Count 12, therefore, depends entirely on what remains: an office advance and two street encounters.

**B. Incorporation by Reference and *Johnson* Do Not Supply Facts the Complaint Does Not Plead, and the Attempted Kiss Is Not the Assault Count 12 Alleges.**

Plaintiff argues that Paragraph 224 incorporates every prior allegation and that, under *Johnson v. City of Shelby*, she need not identify the legal theory each fact supports. (Opp. at 5, 7.) Defendants do not seek dismissal because a legal theory was imperfectly labeled. *Johnson* holds that pleading rules do not countenance dismissal for an imperfect statement of the legal theory. But the same decision confirms that a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." 574 U.S. 10, 11-12 (2014). Incorporation carries facts into a count. It does not change what those facts say.

What Paragraphs 40 and 41 say is limited. On one occasion at work, Agadjani allegedly "approached Plaintiff and attempted to kiss her in his office," and Plaintiff "immediately pulled away and reiterated that she was not interested in a relationship." (Compl. ¶¶ 40-41.) Those paragraphs plead an unwanted romantic advance that Plaintiff rebuffed. They do not allege that

Agadjani threatened her, displayed force, or intended to place her in fear. They also do not allege that she apprehended harmful contact. Count 12 attributes Plaintiff's fear to threats "through verbal attacks, text messages and social media posts" (Compl. ¶ 226), not to the advance. Intent is an element of the claim and *Gould* dismissed in part because the plaintiff there failed to allege it. 99 A.D.3d at 760.

*Sola v. Swan* does not help Plaintiff. That decision affirmed the denial of *summary judgment* because "[i]ssues of fact exist as to whether the individual defendant touched plaintiff without her consent in a manner that was offensive and intended to arouse apprehension." 18 A.D.3d 363 (1st Dep't 2005). The Complaint here pleads no touching and no intent to arouse apprehension. Nor did Defendants concede the point. Their footnote said that Count 12 does not identify the advance as its basis and that Defendants "do not challenge that allegation or the counts it supports on this motion." (Def. Br. at 11 n.2.) Declining to contest an allegation as support for the unchallenged harassment counts is not an admission that the allegation pleads an assault. Plaintiff's offer to amend so that Count 12 would "expressly identify the attempted kiss as a basis for the claim" (Opp. at 15) confirms that, as pleaded, it does not.

**C. The Street Encounters Plead Yelling from Across a Street, Not an Advance on Plaintiff.**

Courts have drawn a clear line as it pertains to this specific count and allegation. "[F]inger pointing and generalized yelling" "is not the type of menacing conduct that may give rise to a reasonable apprehension of imminent harmful conduct needed to state an actionable claim of assault." *Okoli v. Paul Hastings LLP*, 117 A.D.3d 539, 540 (1st Dep't 2014). A complaint crosses that line only when it alleges physical movement against the plaintiff. In *Berg v. Chelsea Hotel Owner, LLC*, the defendant encroached further upon her while screaming, and

only that allegation "describe[d] the menacing physical act …." 203 A.D.3d 484, 486 (1st Dep't 2022) (internal citations omitted).

The Complaint falls on the *Okoli* side of that line. On April 22, 2025, Agadjani allegedly screamed an insult and then "briefly walked away but doubled-back from the other side of the street, yelling to Nhaisse." (Compl. ¶¶ 115-116.) Plaintiff emphasizes that he "doubled back." (Opp. at 8.) The Complaint alleges that he did so "from the other side of the street" in order to address her companion. It does not allege that he crossed the street, closed the distance, came within reach of Plaintiff, or made any gesture toward her. At the later encounter, he "began shouting profanities in Russian at both Plaintiff and the vendor" and kept yelling while she recorded. (Compl. ¶¶ 120-124.) The Complaint pleads no approach there either. This is the "generalized yelling" that *Okoli* held insufficient even across a deposition table. It is also less than the conduct dismissed in *Gould*, where the supervisor entered the plaintiff's hotel room uninvited and screamed at her. 99 A.D.3d at 760.

Plaintiff's allegations of fear (Compl. ¶¶ 113, 117, 123, 155) do not fill the gap. They *describe her reaction, not Agadjani's conduct*. The element requires menacing conduct capable of producing a *reasonable* apprehension of imminent contact. *Okoli*, 117 A.D.3d at 540. On this point, *Waters v. Town Sports International Holdings, Inc.* is illustrative. The court in *Waters* reasoned that "Mere words or threats alone are insufficient to constitute an assault," and it sustained the claim only because the defendants chased the plaintiff, shoved past him to block the exit, and tried to rip his backpack and cell phone from his person. 2014 WL 3765564, at *3 (Sup. Ct. N.Y. Cnty. July 31, 2014). The court also relied on the fact that the defendants "failed to address plaintiff's contentions as to this claim in reply …." *Id.* Nothing comparable is alleged here. Count 12 should be dismissed.

## POINT II

## COUNT 2 FAILS BECAUSE THE COMPLAINT PLEADS NO OPPOSITION TO A PRACTICE THAT TITLE VII MAKES UNLAWFUL

**A. Plaintiff's Messages to Agadjani Do Not Signal Opposition to Sex Discrimination.**

Title VII protects an employee who "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Accordingly, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). Magic words are not required, but "neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Id.* at 17. Plaintiff's own authorities apply the same limit. *Sumner* protects "informal protests of discriminatory employment practices, including making complaints to management …." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). While in *Kotcher*, the employee "did make an internal complaint to company management, protesting the sexually harassing actions of her supervisor." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992).

Assume that Trax is charged with every word Plaintiff wrote to Agadjani. Those words still are not protected opposition. The Complaint itself describes Paragraph 72 as a message in which Plaintiff said she was upset and "reminded Agadjani that she did not want a romantic relationship with him." (Compl. ¶ 72.) The message reads: "I'm working for you, I'm managing at your work and I'm happy to give my 100% because I believe in you but I don't believe in any relationship between us." (*Id.*) That message separates her work from the personal relationship

and commits her to the job. It does not say that her employment *was conditioned* on anything or that she was treated differently because of her sex. Paragraph 74 ends a personal exchange: "My choice is to refuse to deal with you. This was everything[,] you sealed it. Thank you for everything you have done for me. Take care!" (Compl. ¶ 74.) Paragraphs 90 and 94 request leave for migraines and protest the suspension because "I asked for few days off because I'm sick with migraine." (Compl. ¶¶ 90, 94.) None of these messages refers to sex, gender, discrimination, or any employment practice.

Plaintiff answers that Agadjani "could not have misunderstood what Plaintiff was objecting to." (Opp. at 12.) That answers the wrong question. He understood that she was declining a relationship. *Kelly* asks whether he could reasonably have understood her to be opposing a practice Title VII prohibits. Plaintiff's answer turns every refusal into a "complaint," which is just her rejection theory under another name. That theory fails for the reasons stated in Point II.C.

**B. Paragraph 93 Means What It Says, and the Agent Clause Does Not Supply Protected Activity.**

Plaintiff reads Paragraph 93 as describing only the absence of anyone above Agadjani. (Opp. at 10-11.) The sentence has two clauses: Plaintiff had "no one to complain to" *and* "no one higher up." (Compl. ¶ 93.) Her reading deletes the first clause. The Court reads the pleading as written, and a retaliation claim fails where the pleading "itself belies any inference of retaliatory intent." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) (summary order). Here the pleading defeats the protected-activity element. Plaintiff herself concedes that Paragraph 186 is imprecise and offers to rewrite it. (Opp. at 16.)

The agent clause does not change the analysis. Section 2000e(b) defines "employer" to include "any agent of such a person." 42 U.S.C. § 2000e(b). That clause identifies who is

answerable and whose knowledge is imputed. It says nothing about what counts as opposition under § 2000e-3(a). Defendants' positions are therefore consistent. Because Agadjani is the only actor, the question is not who heard Plaintiff's words but whether those words opposed an unlawful practice. They did not. That position does not immunize owner-operators. An employee who protests discrimination directly to an owner engages in protected activity. Plaintiff did not protest discrimination, and her Title VII claims based on the same conduct (Counts 1 and 18) are not challenged on this motion.

*Rice v. Smithtown Volkswagen* is not to the contrary. The plaintiff there complained to the general manager about sexual harassment, and the court inferred that the owner who directed the termination knew of those objections. 321 F. Supp. 3d 375, 390-91 (E.D.N.Y. 2018). *Rice* addressed awareness of a harassment complaint that had actually been made. It does not hold that personal messages declining a relationship are protected activity.

**C. The Unpleaded Rejection Theory Rests on an Open Question and Non-Binding Authority.**

Count 2 pleads retaliation "for complaining," not for rejecting advances. (Compl. ¶ 186.) Even recast, the claim fails. The Second Circuit "has not yet ruled on whether rejecting a workplace harasser's sexual advances can qualify as a protected activity under Title VII and the NYSHRL, an issue over which district courts have disagreed …." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 124 (2d Cir. 2024). It then held the rejections before it "insufficiently clear, as a matter of law, to constitute a protected activity." *Id.* In *Reed*, the court affirmed a Rule 12(b)(6) dismissal because, "regardless of whether rejecting a sexual advance can ever count as opposing an unlawful employment practice, Reed has failed to allege adequately that she had a reasonable, good-faith belief that McCauley's conduct violated the law or that her

conduct constituted opposition to unlawful conduct." *Reed v. Fortive Corp.*, 2024 WL 1756110, at *2 (2d Cir. Apr. 24, 2024) (summary order).

Plaintiff's rejections clearly declined a romance. (Compl. ¶¶ 38, 41, 62, 72, 74.) None, however, communicated that she was opposing unlawful conduct, which is the second showing *Reed* requires. Her own words framed the refusal as personal and affirmed her commitment to the job. (Compl. ¶ 72.) To supply the missing belief, Plaintiff points to Paragraphs 254 and 255. (Opp. at 13-14.) Those paragraphs are the quid pro quo allegations of Count 18, which is not challenged. Borrowing them shows that the rejection theory would attach a second label to the same conduct, not plead protected activity. Plaintiff's district-court decisions do not bind this Court and do not settle the question. *Hughes* acknowledged that "other courts in this Circuit have expressed divergent viewpoints on whether rejecting sexual advances qualifies as protected activity" and the plaintiff's retaliation claim there survived only as a job-applicant claim after the court found she was not Fox's employee. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018). Count 2 should be dismissed.

**<u>POINT III</u>**

**<u>LEAVE TO AMEND SHOULD BE DENIED</u>**

Leave is properly denied where "[t]he problem ... is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Moreover, *Loreley* "leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility …." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Here the defects were identified in Defendants' opening

brief and Plaintiff has stated exactly how she would amend. (Opp. at 15-16.) The Court can therefore assess futility now.

Plaintiff's proposed cures fail. For Count 2, she would rewrite Paragraph 186 in "summary phrasing, which is curable in a sentence identifying Paragraphs 72, 74, 90, and 94." (Opp. at 16.) Those paragraphs quote her messages verbatim, and no amendment can change their words. Their content is the defect. Plaintiff also confirms that Paragraph 93 "states the structural fact that gives her constructive-discharge and quid pro quo theories their force" (Opp. at 11), so it cannot be withdrawn without undermining her surviving claims. For Count 12, she would plead the street encounters "with greater specificity" and name the attempted kiss as a basis. (Opp. at 15.) She identifies no approach, gesture, or encroachment that she could add. Naming the kiss would not supply the intent or apprehension that Paragraphs 40 and 41 omit. Remote texts and broadcast posts cannot be relocated into her physical presence. Where the alleged facts are not in any way adequate to plead assault, repleading is futile. *Sullivan*, slip op. at 37.

## CONCLUSION

Defendants respectfully request that the Court grant their partial motion and dismiss the Second, Fifth, Eighth, and Twelfth Causes of Action of the Complaint with prejudice and without leave to replead.

Dated: New York, New York
October 23, 2026

Respectfully submitted,

______________________
Jason Goldman, Esq.
The Law Offices of Jason Goldman
275 Madison Avenue, 35th Fl.
New York, New York 10016
212.466.6617
jg@jasongoldmanlaw.com
*Counsel for Defendants*